PUBLIC UTILITY COMMISSION OF TEXAS, Appellant,

v.

COALITION OF CITIES FOR AFFORDABLE UTILITY RATES, et al., Appellees.

GULF STATES UTILITIES COMPANY, Appellant,

v.

COALITION OF CITIES FOR AFFORDABLE UTILITY RATES, et al., Appellees.

Nos. 3–89–093–CV, 3–89–095–CV.

Court of Appeals of Texas, Austin.

Aug. 9, 1989.

See also 776 S.W.2d 221 and 776 S.W.2d 222.

Jim Mattox, Atty. Gen., Susan D. Bergen, Karen Pettigrew, Asst. Attys. Gen., Austin, for Public Utility Com'n of Texas.

Jim Boyle, Law Offices of Jim Boyle, Austin, for Cities for Affordable Rates.

Jim Mattox, Atty. Gen., W. Scott McCollough, Asst. Atty. Gen., Austin, for the State.

Grace Casstevens, Butler & Casstevens, Austin, for Cities of Bridge City, et al.

Kenneth G. Hurwitz, Ritts, Brickfield & Kaufman, Washington, D.C., for North Star Steel of Texas.

John L. Laakso, Asst. Public Counsel, Austin, for Office of Public Utility Counsel.

Barry Bishop, Clark, Thomas, Winters & Newton, Austin, Gulf States Utilities Co.

Before SHANNON, C.J., and ABOUSSIE and SMITH \*, JJ.

SHANNON, Chief Justice.

Appellees, Coalition of Cities for Affordable Utility Rates and others, filed a declaratory judgment suit in the district court of Travis County pursuant to Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–37.011 (1986 & Supp.1989). By their suit, appellees sought a declaration that appellant Public Utility Commission of Texas had no authority to entertain a hearing concerning the prudence *vel non* of appellant Gulf States Utilities Company's investment of $1.4 billion in the River Bend Nuclear Generating Station. Ancillary to their declaratory judgment suit, appellees sought a temporary injunction prohibiting the Commission from conducting such hearing.

After a hearing, the district court signed an injunctive order prohibiting the Commission from going forward with its hearing. This Court will dissolve the injunction.

The appeal arose from consolidated administrative appeals to district court from the agency order in Docket No. 7195. In Docket No. 7195, Gulf States sought an electrical rate increase predicated upon, among other things, rate base recognition

---

\* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't.Code Ann. § 74.003 (1988).

of its investment in River Bend. The several appellees challenged Gulf States' prudence in determining in 1979 to go forward with the construction of River Bend. After a protracted evidentiary hearing, the Commission entered its order in Docket No. 7195 setting rates and therein recognizing Gulf States' prudence in investing some $2.273 billion in the construction of River Bend. By further provisions of its order, the Commission sought to defer for a later hearing the determination of the prudence of an additional $1.4 billion investment by Gulf States in River Bend. Thereafter, in March 1989, Gulf States filed with the Commission its new rate case, Docket No. 8702, in which it requested rate base recognition of $1.4 billion in River Bend construction costs. The Commission scheduled the matter for hearing. The district court then signed the injunctive order here under consideration. The district court's order prohibits the Commission from going forward with the hearing.

 In an appeal from an order granting (or denying) an application for a temporary injunction, appellate review is confined to the validity of the order granting (or denying) the injunctive relief and the merits of the underlying lawsuit are not presented for review. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978). Indeed, appellate consideration of the merits of the underlying lawsuit in an appeal of a temporary order is error. *Id.; Hertz Corp. v. State Department of Highways*, 728 S.W.2d 917, 919 (Tex.App.1987, no writ). In a hearing on an application for a temporary injunction, the only question before the trial court is the applicant's right to the preservation of the status quo of the subject matter of the suit, pending a final trial on the merits. To warrant the issuance of a temporary injunction, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. The trial court is clothed with broad discretion in determining whether the pleadings and evidence present a case of probable right

and probable injury. The trial court's order in issuing or denying the writ of injunction will be reversed only on a showing of a clear abuse of discretion. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953). These rules are applicable in appellate review of a judgment rendered in a temporary injunction proceeding ancillary to a declaratory judgment suit. *Public Utility Commission v. City of Austin*, 710 S.W.2d 658, 660 (Tex.App.1986, no writ).

In its order, the district court concluded in its central premise that the Commission's order in Docket No. 7195 passed upon the "prudence issues" and that, as a result, the principles of res judicata and collateral estoppel barred the Commission from conducting the second hearing in Docket No. 8702.[1] Gulf States attacks the district court's conclusion by its first point of error.

 The Latin phrase "res judicata" means that the matter has been adjudged, a thing judicially determined, or a matter settled by judgment. The principle of res judicata is an old one founded upon public policy. Its function is to expedite justice by ending litigation and preserving the sanctity of judgments. *Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex.1971); *Stewart v. City of Austin*, 744 S.W.2d 682 (Tex.App.1988, writ ref'd). An existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit. *Permian Oil Co. v. Smith*, 129 Tex. 413, 107 S.W.2d 564 (1937). The common law rule of res judicata as applied in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried. *Ogletree v. Crates*, 363 S.W.2d 431 (Tex.1963).

---

1. It occurs to this Court that the principles of res judicata or collateral estoppel would be more properly asserted as defenses in the Docket No. 8702 hearing rather than asserted affirmatively as basis for appellees' declaratory and injunctive relief in district court.

■ Under proper circumstances, the principles of res judicata are applicable to administrative orders. *Sexton v. Mount Olivet Cemetery Association,* 720 S.W.2d 129 (Tex.App.1986, writ ref'd n.r.e.); *Al-Jazrawi v. Texas Board of Land Surveying,* 719 S.W.2d 670 (Tex.App.1986, writ ref'd n.r.e.); *Champlin Exploration, Inc. v. Railroad Commission of Texas,* 627 S.W.2d 250 (Tex.App.1982, writ ref'd n.r.e.).

■ Resolution of the present appeal hinges upon analysis of the Commission's order. If, indeed, the Commission deferred for later determination the prudence of the $1.4 billion costs of construction of River Bend, then the principles of res judicata are inapplicable. On the other hand, if there was no deferral of that matter, then the order in Docket No. 7195 may be asserted as a bar in the Docket No. 8702 proceeding.

The Commission incorporated its findings of fact and conclusions of law into its order. In that connection, the Commission adopted its examiners' report in large part but rejected and modified it in other respects. Pertinent to the problem in this appeal, the examiners recommended the adoption of finding of fact no. 164 that nine percent of the total costs of the River Bend project be excluded as imprudent. The examiners also recommended the adoption of a conclusion of law no. 10 that the principle of res judicata precludes any further litigation of the River Bend prudence issues. The Commission rejected the above described proposed finding of fact and conclusion of law and, instead, filed the following findings of fact nos. 164 and 164A and conclusion of law no. 10:

164. The preponderance of the evidence in this case establishes that $2.273 billion of River Bend capital costs were prudently and reasonably incurred. The evidence is inadequate to support a finding of either prudence or imprudence with regard to construction costs in excess of $2.273 billion, with the exception of the costs related to the 50–month schedule and TDI, addressed in Findings of Fact Nos. 133 and 145.

164A. GSU's share of all River Bend capital costs in excess of $2.273 billion should be excluded from plant in service *at this time* for lack of sufficient evidence as to the prudence and reasonableness of those costs. The amount which should be included in plant in service, given GSU's 70 percent share of the plant, is $1.5911 billion [emphasis added].

10. Pursuant to PURA Sections 16(a), 38, 39(a), and 41, the Commission may reexamine on rehearing or in a subsequent proceeding the prudence and reasonableness of those River Bend construction costs regarding which the evidence is inadequate to support a finding of either prudence or imprudence.

■ A judgment is construed like other written instruments. *Permian Oil Co. v. Smith,* 129 Tex. 413, 107 S.W.2d 564 (Tex. 1937). If a judgment is unambiguous, the court's duty is to declare its effect in light of the literal meaning of the language employed. *Adams v. Adams,* 214 S.W.2d 856 (Tex.Civ.App.1948, writ ref'd n.r.e.). There is no reason that the same rules should not be applicable to agency orders.

From an examination of the language of findings of fact nos. 164, 164A, and conclusion of law no. 10, this Court concludes that the Commission, in exercising its discretion in the control and management of its docket, resolved to postpone for a later determination the prudence *vel non* of Gulf States' investment of the additional $1.4 billion in the River Bend project.

That the Commission postponed its decision on the additional $1.4 billion investment was recognized by Commissioner Thomas in his "concurring" order, "I respectfully dissent from the decision of the majority to hold in abeyance $1.453 billion of the investment in the River Bend Nuclear Plan, to allow the company an opportunity to prove construction prudence on rehearing. In my opinion, the record was sufficiently developed to reach a final conclusion."

The district court further concluded that even though the Commission may not have "ruled directly" on the prudence issues of the $1.4 billion investment, it must have considered those issues in arriving at the findings and conclusions it made. The dis-

trict court asserted in addition that even if the Commission did not consider those issues, Gulf States "had ample opportunity to have the issue considered, litigated and decided." In either event, opined the district court, the rule of res judicata barred subsequent assertion of the issue in Docket No. 8702.

This Court does not agree. We, of course, recognize and acknowledge the rule of res judicata that bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried. *Ogletree*, 363 S.W.2d 431.[2] In any event, the rule of res judicata has no application to the facts in this appeal. Here the Commission explicitly postponed for a later time determination of one of Gulf States' major claims. The Commission's action in this respect may be compared to that of the trial court in severing out a claim and proceeding separately with it. Tex.R.Civ. P.Ann. 41 (Supp.1989). No one would countenance a suggestion that res judicata bars litigation of the severed claim.

As is apparent, this Court has concluded that appellees have failed to show a probable right. Accordingly, it is unnecessary to examine appellees' claim of probable injury.

The order is reversed and the temporary injunction is dissolved.

**2.** Nevertheless, in the administrative practice where the conduct of a business is subject to the continued supervision by an agency, it is recognized that the public interest requires that the agency should be permitted to make new orders affecting the future conduct of the business. *See* 2 Cooper, State Administrative Law 523 (1965).